# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 29 2017, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas P. Keller
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Andrew Swank,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 29, 2017

Court of Appeals Case No.
71A03-1606-CR-1395

Appeal from the St. Joseph
Superior Court

The Honorable Jane Miller, Judge

Trial Court Cause No.
71D01-1509-F3-47

**May, Judge.**

[1] Andrew Swank ("Swank") challenges his conviction of Level 3 felony aggravated battery[1] for shooting his uncle in the stomach. He asserts the State failed to rebut his claim of self-defense. We affirm.

## Facts and Procedural History

[2] In the early morning hours of September 22, 2015, Swank got in to a heated argument with his uncle, Donald Swank ("Donald"). Donald was almost back to his house, where Swank was waiting for him, when Donald received a call from Swank, who was "[i]rate" and worried about his clothes, which were in the van Donald was driving to buy crack cocaine. (Tr. at 29.) He told Donald, "I'm going to shoot you, if my F-ing clothes are gone." (*Id*. at 77.) Donald and Swank yelled at one another on the telephone until Donald pulled the van into the driveway.

[3] Upon his arrival, Donald quickly exited the van and ran in the front door of the house to confront Swank. Donald ran up to Swank, who was seated in a chair in the back room, and told him to get out of the house. Swank pulled a .22 caliber pistol out of his waistband and pointed it at Donald. Donald told Swank he had something for him, and Donald left the room to get an aluminum baseball bat. Donald then stood in the kitchen, screaming for Swank to "get the fuck out," (*id*. at 234), and beating the stove with the baseball bat.

---

[1] Ind. Code § 35-42-2-1.5 (2014).

[4] Erik Swank ("Erik"), Swank's father and Donald's brother, stepped between the two fighting men, asked them both to calm down, and told Swank to leave via the back door of the house to avoid walking past Donald. Swank put on his shoes, grabbed his backpack, and walked out the back door. Thirty seconds to a minute later, when Donald had not heard the van leave to take Swank away from the house, Donald dropped the bat in the kitchen and walked out the front door.

[5] From the porch, which was on the driver's side of the van, Donald again yelled for Swank to leave. Swank was on the passenger side of the van and had the front passenger door open. Swank stepped up on the floorboard of the van, leaned over the front of the windshield of the van, and pointed his gun at Donald. Swank told Donald to go back in the house and announced he was going to shoot Donald, but Donald did not retreat into the house. Swank fired a shot that hit Donald in the stomach. Swank then fled the scene, and Donald was taken to the hospital for emergency surgery.

[6] The State charged Swank with Level 3 felony aggravated battery because the gunshot wound created a substantial risk that Donald would die. *See* Ind. Code § 35-42-2-1.5 (2014) ("A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death . . . ."). At trial, Swank admitted shooting the gun and admitted the injury created a substantial risk of

death.[2]  Thus, the only issue before the jury was whether the shooting occurred in self-defense.  The jury found Swank guilty, and the trial court imposed a twelve-year sentence.

# Discussion and Decision

[7]     Swank argues the State did not present sufficient evidence to rebut his claim of self-defense.  "A valid claim of self-defense is legal justification for an otherwise criminal act."  *Coleman v. State*, 946 N.E.2d 1160, 1165 (Ind. 2011).

> (c)  A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force.  However, a person:
>
> > (1) is justified in using deadly force; and
> >
> > (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony.  No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.
>
> (d)  A person:

---

[2] Donald needed emergency surgery, during which doctors had to remove part of his bowel and colon.

> (1) is justified in using reasonable force, including deadly force, against any other person; and
>
> (2) does not have a duty to retreat;
>
> if the person reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on the person's dwelling, curtilage, or occupied motor vehicle.

Ind. Code § 35-41-3-2 (2013). To have the statutorily-required reasonable belief that the force used was necessary, a defendant must have had both a subjective belief that the force used was necessary to prevent serious bodily injury and that a reasonable person would have believed the force he used was necessary under the circumstances. *Littler v. State*, 871 N.E.2d 276, 279 (Ind. 2007).

[8] When a defendant's claim of self-defense finds support in the evidence, the State must negate at least one of the elements. *King v. State*, 61 N.E.3d 1275, 1283 (Ind. Ct. App. 2016), *trans. denied*. "The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Id*.

[9] Our review of an appellant's challenge of the State's evidence rebutting a claim of self-defense is the same as for any sufficiency claim. *Id*. We consider only the evidence and inferences that support the verdict; and we may not reweigh evidence or assess witness credibility. *Id*. We will not reverse unless "no

reasonable person could say that self-defense was negated by the State beyond a reasonable doubt." *Id.*

[10] Swank notes Erik testified that Swank had the gun out *after* Donald began banging the bat on the stove, that Swank left the house after getting his possessions, and that Donald then went out the front door with the bat. He also notes his own testimony that Donald approached him outside with the bat, that he was afraid Donald would hit him with the bat, and that Donald was only one step away from him when he shot the gun. Based on those pieces of testimony, Swank argues he "was justified in using deadly force. He had withdrawn from the initial confrontation. Donald was the individual, who while armed with the baseball bat, approached [Swank] outside by the van. [Swank] was in imminent danger, and fired the .22 pistol." (Appellant's Br. at 10.) However, Swank is relying on the evidence most favorable to his defense, and that is not the evidence we are to consider. *See King*, 61 N.E.3d at 1283 ("We consider only the probative evidence and reasonable inferences drawn from the evidence that support the verdict.").

[11] The State presented three witnesses who testified Donald left the baseball bat in the house when he went out to the porch. In addition, Donald was standing on or in front of the porch, which was on the driver's side of the van, and Swank was on the passenger side of the van. As it would be impossible for an unarmed Donald to have harmed Swank when a van was between them, the State's evidence demonstrated Swank could not have had a reasonable belief that he needed to shoot Donald. *See id.* at 1284 (defendant's claim of a fight

undermined from autopsy evidence that victim was shot in the head from more than three feet away).

[12] Because the State presented sufficient evidence to rebut Swank's claim of self-defense, we affirm Swank's conviction of Level 3 felony aggravated battery.

[13] Affirmed.

Najam, J., and Bailey, J., concur.